**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Megan Jacksen, | No. CV-21-00087-PHX-DGC |
| Plaintiff, | **ORDER** |
| v. | |
| Chapman Scottsdale Autoplex, LLC, an Arizona Limited Liability Company, d/b/a Chapman Volkswagen Scottsdale Arizona, | |
| Defendant. | |

Plaintiff Megan Jacksen alleges that Defendant Chapman Scottsdale Autoplex, LLC ("Chapman") made phone calls and sent text messages to her in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq*. Chapman moves to stay this action and compel arbitration. Doc. 21. The motions are fully briefed, and no party requests oral argument. Docs. 21, 22, 23. The Court will grant the motion.

**I.  Background.**

The facts are taken from the second amended complaint, as well as the motion to compel and associated affidavits and exhibits. Docs. 17, 21.

Jacksen purchased a vehicle from Chapman in February 2015. Doc. 17 ¶ 24. At the time of purchase, Jacksen entered into a Waiver of Purchaser's Right to Sue/Arbitration Agreement ("Agreement") with Chapman. *See* Doc. 21-1 at 2.[1] The Agreement provided that:

---

[1] Citations are to page numbers attached to the top of pages by the Court's electronic filing system.

> Any claim or dispute, whether in contract, tort or otherwise (including the interpretation and scope of this clause and the arbitrability of any issue) between you and us or our employees, agents, successors or assigns, which arises out of or relates in any manner to the purchase and financing of your vehicle or any resulting transaction or relationship (including any such relationship with third parties who do not sign this contract) shall, at your or our election (or the election of any third party), be resolved by neutral, binding arbitration and not by a court action.

*Id.*

The Agreement required Jacksen to waive any right to arbitrate a class action ("Class Action Waiver"). *See id.* It further provided that Jacksen could choose the applicable rules of either the American Arbitration Association ("AAA") or another organization of Jacksen's choice, subject to Chapman's approval. *Id.* The Agreement contained a severability clause stating that "[i]f any part of this Arbitration Agreement other than the Class Action Waiver is found by a court or arbitrator to be unenforceable, the remainder shall be enforceable." *Id.*

In October 2015, Chapman began making marketing and solicitation calls to Jacksen's cell phone, even though Jacksen's number had been registered with the National Do Not Call Registry since December 2013. Doc. 17 ¶¶ 25, 27. Jacksen requested that Chapman stop calling her, but claims the requests were ignored. *Id.* ¶ 28. In September 2020, more than five years after Jacksen purchased her car, Chapman reobtained Jacksen's contact information from Volkswagen USA, the manufacturer of Jacksen's car. Docs. 22 at 3, 23 at 5. Chapman subsequently made at least six marketing calls and sent one text message to Jacksen's phone to determine her interest in purchasing a new vehicle. Doc. 22 at 3-4.

Jacksen filed this class action lawsuit on January 15, 2021, alleging violations of the TCPA, 47 U.S.C. §§ 227, *et seq.* Doc. 1. She filed an amended complaint in March 2021. Doc. 9. Both complaints named Chapman's parent company, Chapman Automotive Group, LLC ("CAG"), as defendant. CAG answered the amended complaint

(Doc. 10) and in April attended a Rule 26(f) meeting, drafted a joint case management report, and participated in a case management conference with the Court. *See* Doc. 13. After CAG responded to written discovery identifying Chapman as the correct party, Jacksen filed a second amended complaint on April 28, 2021 naming Chapman as the sole defendant. *See* Docs. 17, 23 at 2. On May 12, 2021, Chapman filed the motion to compel arbitration in lieu of answering the second amended complaint. Doc. 21.[2]

## II. Legal Standard.

Neither party disputes that the Federal Arbitration Act ("FAA") governs the pending motion. The FAA "provides that arbitration agreements 'shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.'" *Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092 (9th Cir. 2009) (quoting 9 U.S.C. § 2). Because arbitration is a matter of contract, "a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986). Thus, "[a] party seeking to compel arbitration has the burden under the FAA to show (1) the existence of a valid, written agreement to arbitrate; and, if it exists, (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Prop. Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015).

## III. Waiver.

Section 3 of the FAA provides that a federal court must, upon application of one of the parties, stay an action "brought . . . upon any issue referable to arbitration," unless "the applicant for the stay is . . . in default in proceeding with such arbitration." 9 U.S.C. § 3. Section 4 provides that an arbitration provision need not be enforced if there is a dispute regarding a party's compliance with the provision. *Id.* § 4. Consistent with this

---

[2] The caption of the second amended complaint still lists CAG as the defendant (Doc. 17 at 1), but this clearly is an oversight. Jacksen represented to the Court that she filed the second amended complaint solely to substitute Chapman as the defendant in place of CAG, the substance of the complaint makes clear that Chapman is the only defendant, and the caption appears to have been corrected in Jacksen's response to the motion to compel. *See* Doc. 22 at 1. CAG is no longer a party to this case.

language, the Ninth Circuit has stated that a federal court presented with a motion to compel arbitration may consider whether the moving party has waived its right to arbitrate. *Martin v. Yasuda*, 829 F.3d 1118, 1123 (9th Cir. 2016); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 406 (1967) (courts may consider issues related to the "performance of the agreement to arbitrate" on a motion to compel arbitration). A party may waive the right to arbitrate, for example, by refusing a request to arbitrate or by actively litigating the claim to take advantage of being in federal court. *Martin*, 829 F.3d at 1125.

Because waiver is disfavored, the party seeking waiver "bears a heavy burden of proof." *Id.* at 1124. The party must show "(1) knowledge of an existing right to compel arbitration; (2) acts inconsistent with that existing right; and (3) prejudice to the party opposing arbitration resulting from such inconsistent acts." *Id.* (internal quotation marks and citations omitted).

Jacksen argues that Chapman waived arbitration by delaying its motion to compel until May 2021, almost four months after she filed the initial complaint. Doc. 22 at 4-6. Jacksen also contends she was prejudiced by the time and expense spent attending discovery and case management conferences, drafting a joint case management report, and engaging in initial discovery. *Id.* at 5-6. Chapman counters that there was no undue delay because it was only named in the action after Jacksen filed the second amended complaint in April 2021, at which point it promptly moved to compel arbitration in lieu of answering the complaint. Doc. 23 at 2.

Chapman clearly was aware of its right to compel arbitration. It was a signatory to the Agreement and represented by the same counsel as the originally named defendant, CAG. Doc. 21-2 at 2; *see also* Doc. 13 at 1. In April 2021, before Jacksen filed the second amended complaint and substituted Chapman as the defendant, a joint case management report filed by Jacksen and CAG noted that Chapman would be substituted as a defendant in a forthcoming amended pleading. Doc. 13 at 2, 4. Correspondence between the parties' attorneys also reveals a disagreement about the scope and

applicability of the Agreement as early as February 2021.  *See id.* at 4-5; *see also* Doc. 22-3 at 1-2.

The Court cannot conclude, however, that Chapman acted inconsistently with its right to arbitrate.  Upon being formally added as a party, Chapman promptly moved to compel arbitration.  And the initial case management and discovery matters undertaken by CAG in the few months before Chapman was brought into the case do not constitute "active litigation" aimed at taking advantage of being in federal court.  *See, e.g., Martin*, 829 F.3d at 1125 (defendant spent 17 months litigating the case, filed a motion to dismiss on a key merits issue, entered into a protective order, and prepared for and conducted a deposition); *Smith v. SMX, LLC*, No. 18-CV-01903-JD, 2019 WL 720984, at *2 (N.D. Cal. Feb. 20, 2019) (parties engaged in "substantial" discovery and court conferences, case deadlines were extended by several months, and fact discovery had closed).

Jacksen has also failed to establish prejudice.  She has not "expended considerable time and money," only later to be "deprived of the benefits for which [she] has paid by a belated motion to compel."  *Martin*, 829 F.3d at 1127.  Her litigation expenses have been limited to initial case management and discovery matters, and she likely will benefit from the strategic thinking and information learned in that process, even in arbitration.

Given her heavy burden and the "liberal federal policy favoring arbitration," *Lozano v. AT&T Wireless Servs., Inc.*, 504 F.3d 718, 725 (9th Cir. 2007), Jacksen has not shown waiver.

**IV.  Delegation.**

Courts determining whether to compel arbitration must consider: "(1) whether there is an agreement to arbitrate between the parties; and (2) whether the agreement covers the dispute."  *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015) (quotation marks and citations omitted).  These "gateway issues" normally are for a court to decide, but can be delegated to an arbitrator where the parties "clearly and unmistakably" so provide.  *Momot v. Mastro*, 652 F.3d 982, 987-88 (9th Cir. 2011).  Where a contract delegates the arbitrability question to the arbitrator, "the courts must

respect the parties' decision as embodied in the contract" and "may not decide the arbitrability issue." *Henry Schein, Inc. v. Archer and White Sales, Inc.*, 139 S. Ct. 524, 530 (2019).

The first gateway issue identified above – whether there is an agreement to arbitrate between the parties – is not disputed in this case. Jacksen does not contend that the arbitration agreement is invalid.

The second gateway issue – whether the arbitration agreement covers the dispute in this case – is disputed by the parties. Chapman contends that this question must be answered by the arbitrator, not by the Court, because it has been "clearly and unmistakably" delegated to the arbitrator by the Agreement's delegation clause. *See* Docs. 21 at 5, 23 at 3. That clause states that any claim or dispute, "including the interpretation and scope of this clause and the arbitrability of any issue," shall "be resolved by neutral, binding arbitration and not by a court action." Doc. 21-1 at 2. Jacksen responds that the clause does not clearly and unmistakably delegate gateway issues to the arbitrator because the Agreement's severability clause states that the Agreement shall be enforceable if any section other than the Class Action Waiver is "found by a court or arbitrator" to be unenforceable. *See id.* Jacksen argues that this provision contemplates court involvement in disputes involving the enforceability of the arbitration provision and contradicts the delegation clause cited by Chapman, rendering the delegation clause ambiguous. Doc. 22 at 6. She cites a long line of cases holding that conflicting delegation and severability provisions preclude a finding of clear and unmistakable intent to delegate gateway issues to the arbitrator. *Id.* at 7-8 (citing cases).

The Court is not persuaded by Jacksen's argument. With one exception, her cases involve severability clauses suggesting that a *court* must find the agreement unenforceable. These clauses have been found inconsistent with broad delegations of decision-making authority to arbitrators. *See, e.g.*, *Durruthy v. Charter Communs., LLC*, No. 20-CV-1374-W-MSB, 2020 WL 6871048, at *3 (S.D. Cal. Nov. 23, 2020) ("[A]ny part of the contract found to be unenforceable by a court is severable from the rest of the

- 6 -

Agreement."); *Levi Strauss & Co. v. Aqua Dynamics Sys.,* No. 15-cv-04718-WHO, 2016 WL 1365946, at *7 (N.D. Cal. Apr. 6, 2016) ("[I]f any part of this Agreement shall be declared invalid or unenforceable by a court of competent jurisdiction, it shall not affect the validity of the balance of this Agreement."); *Vargas v. Delivery Outsourcing, LLC*, No. 15-cv-03408-JST, 2016 WL 946112, at *6 (N.D. Cal. Mar. 14, 2016) ("[I]f any provision of this Agreement or portion thereof is held to be unenforceable by a court of law or equity, said provision or portion thereof shall not prejudice the enforceability of any other provision or portion of the same provision[.]"); *Wuest v. Comcast Corp.,* No. C 17-04063 JSW, 2017 WL 6520754, at *3 n.1 (N.D. Cal. Oct. 5, 2017) ("In the event this entire Arbitration Provision is determined to be illegal or unenforceable for any reason, or if a claim brought in a Dispute that is found by a court to be excluded from the scope of this Arbitration Provision, you and Comcast have each agreed to waive, to the fullest extent allowed by law, any trial by jury."). By contrast, the severability clause in this case refers to enforceability decisions by "*a court or arbitrator.*" Doc. 21-2 at 2 (emphasis added). It does not entrust preliminary issues solely to courts, raising questions about the broad delegation to the arbitrator.

Jacksen's only case addressing an arguably similar clause is *Cobarruviaz v. Maplebear, Inc.*, 143 F. Supp. 3d 930 (N.D. Cal. 2015), but that case is distinguishable. The severability clause in *Cobarruviaz* stated that the arbitration agreement would remain binding even if a provision was determined "by any arbitrator or court to be illegal, invalid or unenforceable[.]" *Id.* at 940. This language – which suggested that an arbitrator or a court could decide enforceability – was inconsistent with the delegation clause, which stated that the arbitrator would decide issues of "enforcement." *Id.* at 944. Because "the delegation language [was] inconsistent with the severability clause," the court could not find clear and unmistakable delegation to the arbitrator. *Id.* at 940.

The Agreement here contains no such inconsistency. The delegation clause identifies specific issues for the arbitrator to decide, including the scope of the arbitration clause and the arbitrability of any issue, but does not assign enforceability issues solely to

- 7 -

the arbitrator. There is no inconsistency with the severability clause, which states that "any arbitrator or court" can decide issues of enforceability. Doc. 21-2 at 2.

The Agreement in this case also makes clear that the delegation of discrete issues to the arbitrator does not foreclose the possibility of court involvement. For example, it states that neither party waives the right to arbitrate by "filing suit . . . or seeking or obtaining provisional remedies from a court," and allows for an arbitration award to be entered "in any court having jurisdiction." Doc. 21-2 at 2. It also provides signatories ten business days to opt-out of the Agreement. *Id.* Because these provisions clearly contemplate the possibility of some court involvement before or after arbitration, the Court cannot conclude that the severability clause's reference to court decisions renders the delegation clause ambiguous. *See, e.g.*, *McLellan v. Fitbit, Inc.*, No. 3:16-CV-00036-JD, 2017 WL 4551484, at *4 (N.D. Cal. Oct. 11, 2017) (holding that a severability statement "does not make ambiguous the parties' delegation of gateway issues" where, among other things, the contract allowed individuals to opt out of arbitration and bring suits for injunctive relief without having to arbitrate).

This conclusion is supported by the Ninth Circuit's decision in *Mohamed v. Uber Technologies, Inc.*, 848 F.3d 1201 (9th Cir. 2016). The contracts at issue in *Mohamed* contained arbitration provisions delegating resolution of disputes to an arbitrator, as well as venue provisions granting San Francisco courts exclusive jurisdiction over any disputes arising out of the contracts. *Id.* at 1209. One of the contracts also contained a carve-out provision granting courts jurisdiction over specifically delineated legal challenges. *Id.* at 1208. The district court held that the venue and carve-out provisions conflicted with the broad delegation clauses, which stated that arbitrability would be decided "without limitation" by an arbitrator. *Id.*

The Ninth Circuit disagreed, noting that the clause describing the scope of arbitration was prefaced by the phrase "[e]xcept as it otherwise provides," which eliminated any inconsistency with the carve-out provision. *Id.* Additionally, the venue provisions clearly were intended to cover instances where the parties may need the

- 8 -

involvement of the court despite the broad arbitration clause – for example, to enforce the arbitration agreement or obtain a judgment enforcing an arbitration award. *Id.* The fact that the contracts included venue provisions for these limited instances, the Ninth Circuit held, did not "conflict with or undermine the [arbitration] agreement's unambiguous statement identifying arbitrable claims and arguments." *Id.*

*Mohamed* is not factually identical to this case. The arbitration clause here is not prefaced with "[e]xcept as it otherwise provides," and *Mohamed* involved venue and carve out provisions, not a severability clause. But *Mohamed* recognizes that broad arbitration clauses are not rendered ambiguous when they preserve some role for courts. Several cases have applied *Mohamed* in the context of severability clauses, even when the arbitration clauses did not contain the "[e]xcept as it otherwise provides" language. *See, e.g.*, *Taylor v. Shutterfly, Inc.*, No. 18-CV-00266-BLF, 2018 WL 4334770, at *5 (N.D. Cal. Sept. 11, 2018) (severability provision did not render delegation clause ambiguous because, post-*Mohamed*, "an express delegation provision clause is not rendered ambiguous merely because a different section of the contract recognizes that the parties may need to invoke the jurisdiction of a court."); *MegaCorp Logistics LLC v. Turvo, Inc.*, No. 18-CV-01240-EMC, 2018 WL 3619656, at *6 (N.D. Cal. July 30, 2018) (in light of *Mohamed*, severability provision granting authority to a "court of competent jurisdiction" did not render ambiguous a clause delegating to an arbitrator the "determination of the scope of applicability . . . to arbitrate."); *but see Durruthy v. Charter Commc'ns, LLC*, No. 20-CV-1374-W-MSB, 2020 WL 6871048, at *3 (S.D. Cal. Nov. 23, 2020) (finding *Mohamed* inapplicable because the agreement at issue did not contain the "except as it otherwise provides" language).[3]

---

[3] Jacksen also argues that ambiguity is created by the non-waiver provision of the Agreement and the provision excluding disputes of less than $2,500 from arbitration. Doc. 22 at 7. But the delegation provision does not expressly assign waiver issues to the arbitrator, leaving them to be decided by the Court or by the arbitrator if the parties agree. And the provision excluding disputes of less than $2,500 simply constitutes a clear statement of what level of disputes are arbitrable. The Court does not find that either provision renders the delegation clause ambiguous.

The Agreement clearly and unmistakably delegates gateway issues to the arbitrator. It states without equivocation that "the interpretation and scope of this clause and the arbitrability of any issue" are the province of the arbitrator. Doc. 21-1 at 2. As a result, the parties must litigate their disagreement about the scope of the arbitration provision before the arbitrator. Enforcing this agreement comports with the strong federal policy favoring the resolution of disputes through arbitration. *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) ("questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration."). The Court will grant Chapman's motion to compel arbitration and stay this action.

**IT IS ORDERED:**

1. Chapman's motion to compel arbitration (Doc. 21) is **granted**. The parties are directed to submit this matter to arbitration consistent with the terms of their contract and the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq*.

2. Upon completion of the arbitration, the parties are directed to comply with the provisions of 9 U.S.C. §§ 9-13, as applicable.

3. This action is stayed pursuant to 9 U.S.C. § 3.

4. By **September 30, 2021, and every 60 days thereafter**, the parties shall file a joint report with the Court concerning the status of the arbitration, its timing, and any matters that may require attention by the Court.

Dated this 21st day of July, 2021.

David G. Campbell
Senior United States District Judge