**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Megan Jacksen,<br><br>    Plaintiff,<br><br>v.<br><br>Chapman Scottsdale Autoplex, LLC, an Arizona Limited Liability Company, d/b/a Chapman Volkswagen Scottsdale Arizona,<br><br>    Defendant. | No. CV-21-00087-PHX-DGC<br><br>**ORDER** |

Plaintiff Megan Jacksen alleges that Defendant Chapman Scottsdale Autoplex, LLC ("Chapman") made phone calls and sent a text message to her in violation of the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq*. Chapman moves for summary judgment. Doc. 34. The motion is fully briefed (Docs. 35, 39, 40, 44, 45), and oral argument will not aid the Court's decision. *See* Fed. R. Civ. P. 78(b); LRCiv 7.2(f). The Court will grant the motion in part, deny it in part, and proceed with the final phase of discovery and class certification.

**I.    Count 1.**

Plaintiff abandoned Count 1 in response to Chapman's motion. *See* Doc. 39 at 2. The Court will enter summary judgment on Count 1.

**II.    Count 2.**

    **A.    Consent.**

Count 2 alleges that Chapman violated 47 U.S.C. § 227 by placing six marketing calls and one marketing text message to her cell phone in 2020, while her number was on

the national do-not-call registry.  Section 227 is not violated, however, if the calls or text message were made with Plaintiff's "prior express invitation or permission."  47 U.S.C. § 227(a)(4).  Chapman claims that Plaintiff granted permission for the calls and text when she purchased a vehicle from Chapman in 2015 and executed a retail installment sale contract.  Doc. 34 at 4.  The contract included this provision:

> 5.  SERVICING AND COLLECTION CONTACTS
>
> You agree that we may try to contact you in writing, by e-mail or using pre-recorded/artificial voice messages, text messages, and automatic dialing systems, as the law allows. You also agree that we may try to contact you in these and other ways at any address or telephone number you provide us, even if the telephone number is a cell phone number or the contact results in a charge to you.

*Id.* at 5.

Plaintiff argues that this language is limited to servicing and collection calls and does not authorize marketing calls.  In support, Plaintiff cites FCC decisions and cases from outside the Ninth Circuit.  Chapman cites no case law on this point.

Fifteen minutes of Westlaw research by the undersigned judge found Ninth Circuit cases that seriously undercut Chapman's argument.  In *Van Patten v. Vertical Fitness Grp., LLC*, 847 F.3d 1037 (9th Cir. 2017), the Ninth Circuit held that "an effective consent is one that relates to *the same subject matter* as is covered by the challenged calls or text messages."  *Id.* at 1044-45 (emphasis added).  "[T]he consent must be considered to relate to the type of transaction that evoked it."  *Id.* at 1045.  The Ninth Circuit reiterated this point in *Fober v. Mgmt. & Tech. Consultants, LLC*, 886 F.3d 789, 792 (9th Cir. 2018): "a call must relate to the reason why the called party provided his or her phone number in the first place."  *Id.* at 793.

The consent provided by Plaintiff in the 2015 sales contract related to her purchase of a vehicle and authorized telephone contacts related to servicing the vehicle and

1 2 collecting amounts owed.  The consent does not relate to the purpose of the 2020 calls and text message – marketing entirely new vehicles.

3 4 5 6 7 8 9 10 11 12 Granted, the Ninth Circuit decisions in *Van Patten* and *Fober* concern a slightly different provision of the TCPA – 47 U.S.C. § 227(b)(1)(A), which prohibits automated calls unless the caller has "the prior express consent of the called party."  The provision at issue in this case, § 227(a)(4), prohibits solicitation calls unless the caller has the "person's prior express invitation or permission."  The Court can see no meaningful difference between "prior express consent" and "prior express . . . permission."  Both provisions permit contact with prior consent, and the Court is not inclined to undertake additional detailed research and analysis on this issue when the language of the Ninth Circuit cases is clear and the parties did not bother to cite them.  Chapman has not shown it is entitled to summary judgment on the basis of Plaintiff's consent.

13 **B.   Safe Harbor.**

14 15 16 Chapman also argues that it is entitled to summary judgment because it qualifies for the safe harbor protection found in 47 C.F.R. § 64.1200(c)(2)(i).  For two reasons, the Court is not persuaded.

17 18 19 20 21 22 23 24 25 First, the safe harbor requires that the calls and text message at issue be made in "error."  *Id.*  Chapman contends that it satisfies this requirement because the contacts were made with the erroneous understanding that Plaintiff had consented.  But a case relied on by Chapman – *Mattson v. New Penn Fin., LLC*, No. 3:18-CV-00990-YY, 2020 WL 6270907 (D. Or. Oct. 25, 2020) – found that "[a] question . . . remains concerning whether Defendant called Plaintiff in error because 'it had a good faith belief that it had permission' to call the number." *Id.* at \*4.  The same factual question precludes summary judgment here.  The reasonableness of Chapman's reliance on a consent form that did not include marketing must be addressed in the full factual context of this case.

26 27 28 Second, even if an "error" did occur within the meaning of the regulations, Chapman must show, among other requirements, that "[i]t uses a process to prevent telephone solicitations to any telephone number on any list established pursuant to the

- 3 -

do-not-call rules, employing a version of the national do-not-call registry obtained from the administrator of the registry no more than 31 days prior to the date any call is made, and maintains records documenting this process." 47 C.F.R. § 64.1200(c)(2)(i)(D). This language clearly suggests that a caller must "employ" a relatively current version of the national do-not-call list, and Chapman admits that it does not use the list.

Chapman cites *Johansen v. Efinancial LLC*, No. 2:20-CV-01351-DGE, 2022 WL 168170, at *5 (W.D. Wash. Jan. 18, 2022), for the proposition that it can comply with this safe-harbor requirement by calling only those whom it reasonably believes have consented to its calls. But this view conflates two different provisions of the safe harbor: subsection (c)(2)(ii), which requires written consent, and subsection (c)(2)(i), which requires an "error" and compliance with four specified standards (including use of the do-not-call list). If a reasonable belief in consent can be relied upon to satisfy some or all of the procedures set forth subsection (c)(2)(i), then that subsection would appear to be entirely superfluous because consent alone is sufficient under (c)(2)(ii). Stated differently, if there is consent, then the safe harbor applies because of subsection (c)(2)(ii) and there is no need for subsection (c)(2)(i). The latter subsection thus seems to apply only when consent does not exist.[1] Because it is not clear to the Court that consent can eliminate the express requirement in (c)(2)(i)(D) of "employing" a current version of the do-not-call list, the Court cannot accept Chapman's argument at this stage of the case. The parties should be prepared to address this issue in greater detail in preparation for trial.

**III.   Count 3.**

Count 3 alleges that Chapman violated 47 C.F.R. § 64.1200(d). That provision requires that Chapman implement procedures meeting the following minimum standards:

---

[1] This view is supported by the existence of a third method for coming within the safe harbor – subsection (c)(2)(iii), which applies when the caller has a personal relationship with the recipient. This method requires neither consent nor compliance with the specifics of subsection (c)(2)(i), suggesting that the safe harbor has three distinct methods of qualifying.

- 4 -

(1) Written policy. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.

(2) Training of personnel engaged in telemarketing. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.

*Id.* at § 1200(d)(1)-(2).[2]  Plaintiff alleges that Chapman violated these requirements by "failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list." Doc. 17, ¶ 86.

With its motion for summary judgment, Chapman provides a declaration from Rolland Schreiber, its general manager, outlining the written policy Chapman had in place at the time of its contacts with Plaintiff and the training given to implement the policy.  Doc. 35-3, ¶¶ 12-25.

Plaintiff argues that the Court must disregard the Schreiber declaration because Chapman's Rule 30(b)(6) deponent spoke for the corporation and was unable to provide the same relevant information:

> Defendant's binding 30(b)(6) testimony demonstrates that summary judgment should be denied.  At [the] deposition, Defendant could not describe the training that employees undertake to comply with the Telemarketing Policy. PSOF ¶ 14; *see also* Pl's Resp. to DSOF ¶¶ 53-58. Defendant does not know when the Telemarketing Policy was written, who created the policy, how long the policy had been in effect, or whether there existed other version of the policy.  PSOF ¶ 15; see also Pl's Resp. to DSOF ¶ 45.  Defendant could not describe what steps would be taken to ensure that an individual who requests to no longer receive calls stops receiving calls. PSOF at ¶ 16; *see also* Pl's Resp. to DSOF ¶ 48. Indeed, Defendant's employees can call a telephone number even if a telephone number is marked within Defendant's systems as do not call. PSOF at ¶ 17.

---

[2] There are other requirements in this section, but these are the only two identified in Plaintiff's complaint as having been violated by Chapman.  Doc. 17, ¶¶ 82-90.

Doc. 39 at 13-14.

The Court is not persuaded by Plaintiff's argument. The Rule 30(b)(6) deposition notice did not identify these specific topics as subjects for the deposition. Plaintiff's notice instead said only that the deponent should be prepared to address Chapman's "internal do not call policies and procedures" and its "policies and procedures for complying with the National Do Not Call Registry." Doc. 40-2 at 4. Plaintiff does not dispute that the deponent testified Chapman has a policy for maintaining a do-not-call list, and the deposition notice said nothing about training, steps to ensure that objecting individuals no longer receive calls, or whether Chapman's system prevents calls to do-not-call numbers.

If a party wishes to bind a corporation to Rule 30(b)(6) testimony, it must serve a sufficiently specific notice to apprise the corporation of the topics that will be covered. The notice in this case did not apprise Chapman that these specific topics would be covered, and the Court cannot conclude that it precludes Chapman from providing evidence addressing these un-noticed subjects. As one court has correctly noted, "if the deponent does not know the answer to questions outside the scope of the matters described in the notice, then that is the examining party's problem." *King v. Pratt & Whitney, a Div. of United Techs. Corp.*, 161 F.R.D. 475, 476 (S.D. Fla. 1995).

The Rule 30(b)(6) deponent specifically identified Mr. Schreiber as the person who would know about training and related topics. Doc. 40-1 at 10. Plaintiff chose not to depose Mr. Schreiber. Having made that choice, Plaintiff has no basis for objecting to his declaration now. Because the declaration shows that the requirements of 47 C.F.R. § 64.1200(d)(1)-(2) are satisfied, and Plaintiff presents no controverting evidence, the Court will grant summary judgment on Count 3.

**IT IS ORDERED:**

1. Chapman's motion for summary judgment is **granted** with respect to Counts 1 and 3, and **denied** with respect to Count 2.

2. By **January 20, 2023**, the parties shall provide the Court with a jointly proposed schedule for the remaining discovery in this case and briefing of a motion for class certification. The Court then will either adopt the schedule or set a telephone conference to discuss it with the parties.

Dated this 10th day of January, 2023.

*David G. Campbell*

David G. Campbell
Senior United States District Judge